[Cite as *State v. Barksdale*, 2023-Ohio-4064.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-32 |
| | : | |
| v. | : | Trial Court Case No. 22 CRB 00801 |
| | : | |
| DEZANE NICOLE BARKSDALE | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 9, 2023

. . . . . . . . . . .

ROBERT ALAN BRENNER, Attorney for Appellant

DANIELLE E. SOLLARS, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Dezane Nicole Barksdale appeals from her conviction on one count of child endangering, a first-degree misdemeanor.

{¶ 2} In two related assignments of error, Barksdale challenges the legal sufficiency and manifest weight of the evidence to sustain her conviction.

{¶ 3} We conclude that the State's evidence was legally sufficient to convict

Barksdale and that her conviction was not against the weight of the evidence. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} Barksdale was charged with one count of child endangering in violation of R.C. 2919.22(A). The offense involved her being asleep at home when her three-year-old child was found alone outside in the middle of the street.

{¶ 5} The case proceeded to a bench trial at which three witnesses testified. The first was Melissa Bunch. She was driving near the intersection of Detroit Street and Coddington Avenue on the afternoon of March 17, 2022, when she saw a toddler standing in the middle of the street. Bunch stopped and escorted the child to a sidewalk. She called the police and waited with the child until Xenia police officer Terry Zoerb arrived. Bunch stayed with the child as Zoerb went door to door looking for the toddler's residence.

{¶ 6} The next witness was Zoerb. He testified that he approached Barksdale's house and observed a side door ajar. He stepped inside and announced his presence. Barksdale came downstairs and acknowledged that the toddler was her child. Zoerb testified that Barksdale explained she had been sleeping and that a relative was supposed to be watching the child. Barksdale stayed inside her house with the child while Zoerb returned to his cruiser to write a citation for child endangering. Approximately 15 minutes after Zoerb's arrival at the scene, a female relative of Barksdale's showed up outside as he was preparing the citation. The relative did not emerge from Barksdale's house, and Zoerb could not recall whether she walked up or arrived in a vehicle. Zoerb also could not remember whether the relative told him she was supposed to be watching

Barksdale's child. After he completed the citation, Zoerb attempted to serve it on Barksdale, but she did not answer his knocks on her door.

{¶ 7} The final witness was Barksdale, who testified in her own defense. She explained that she had worked a 12-hour factory shift the previous night. Barksdale admitted being asleep upstairs at the time in question. She testified that her grandmother was supposed to be watching her child while she slept. Barksdale denied knowing that her grandmother had left the child alone. She recalled telling her grandmother that she was going to bed upstairs and seeing her child asleep on the couch. Barksdale testified that her grandmother was watching television when she went to bed. The next thing she knew an officer was yelling at her from downstairs and her grandmother was gone. Barksdale testified that her grandmother moved away after the incident and lived in Michigan at the time of trial.

{¶ 8} Following Barksdale's testimony, the trial court ruled from the bench and stated:

> * * * Statute reads no person who's the parent, guardian, custodian, person having custody, control of a child under 18 years of age or a child of mental or physical disability shall create a substantial risk to health or safety of the child. I have a witness that's testified that this child is on a street in a diaper. Who knows what would have happened if Ms. Bunch had not intervened and taken care of it. You know, this defense is the equivalent of, you know, if—if an illegal substance is found in a pair of pants, it's not my pants. You know, there's nobody here—if—you've got CSB subpoenaed.

There's nothing that would prevent the grandparent from being here to testify and to corroborate. It's just not—there was no evidence—everything I heard was mitigation. There's nothing with respect to this child being placed in extreme danger. * * *

May 10, 2023 Transcript at 31-32.

{¶ 9} The trial court found Barksdale guilty. It imposed and suspended a 180-day jail sentence. It also imposed a $250 fine and placed her on two years of probation. This appeal followed.

## II. Analysis

{¶ 10} Barksdale's two assignments of error state:

I. INSUFFICIENT EVIDENCE WAS PRESENTED TO SUPPORT A CONVICTION FOR ENDANGERING CHILDREN.

II. BARKSDALE'S CONVICTION FOR ENDANGERING CHILDREN IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 11} Although Barksdale was asleep when her toddler was found outside in the street, she claims her conviction was based on legally insufficient evidence and was against the manifest weight of the evidence. Barksdale argues that she did not violate the child-endangering statute because she left her child in her grandmother's care while she slept. In light of officer Zoerb's inability to recall whether the unidentified relative told him she was supposed to be watching the child, Barksdale contends her own testimony about her grandmother being responsible for the child was undisputed. Barksdale further asserts that her testimony was corroborated by the fact that a female relative did arrive while Zoerb was there. Under these circumstances, she claims the evidence failed to

support her conviction for child endangering.

{¶ 12} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 13} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 14} With the foregoing standards in mind, we reject Barksdale's legal-sufficiency and manifest-weight challenges. She was convicted of violating R.C. 2919.22(A), which provides in relevant part: "No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under

eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." The mental state of recklessness is an essential element of child endangering in violation of R.C. 2919.22(A). *State v. McGee*, 79 Ohio St.3d 193, 195-196, 680 N.E.2d 975 (1997).

{¶ 15} Here Barksdale's three-year-old child was found in the street while she was asleep in her house. She nevertheless insists she did not create a substantial risk to the health or safety of her child by violating a duty of care or protection because she left the child in the care of her own grandmother. In support, Barksdale cites *State v. Perrine*, 5th Dist. Stark No. 2001CA00338, 2002-Ohio-2898. In that case, the Fifth District found legally insufficient evidence to convict a mother of child endangering where she went out and left her five-year old son and another child in the care of two babysitters who were ages 12 and 13. Both babysitters fell asleep, and the five-year-old boy was found in the street. The Fifth District reversed the mother's conviction, noting that she had hired two babysitters who had access to a telephone and that the mother also had returned home and checked on her children, at which time her son had been asleep and at least one babysitter had been awake.

{¶ 16} A key distinction between *Perrine* and the present case is that the trial court apparently disbelieved Barksdale's testimony about her grandmother watching her child. As the trier of fact, the trial court acted within its discretion in making this credibility determination. Although an unidentified female relative did appear outside of Barksdale's residence about 15 minutes after officer Zoerb's arrival, the trial court was not obligated to accept as true Barksdale's self-serving and unverifiable claim that this person was her

grandmother or that that this person had been responsible for babysitting while she slept. In assessing the credibility of Barksdale's testimony, the trial court reasonably considered the relative's absence from trial despite being able to corroborate Barksdale's assertion if it were true. We note too that officer Zoerb's inability to recall whether the relative claimed to have been responsible for watching the child did not corroborate Barksdale's testimony. The officer's inability to remember what the relative said favored neither party.

{¶ 17} In short, the State's uncontroverted evidence established that Barksdale was asleep in her home when her three-year-old child was discovered alone in the middle of the street. This evidence was legally sufficient to support Barksdale's child-endangering conviction, particularly in light of the trial court's disbelief of her claim that she had left the child in the care of an absent grandmother. Barksdale's conviction also was not against the weight of the evidence. Despite her contention that her grandmother was responsible for watching the child, this is not an exceptional case in which the evidence weighed heavily against her conviction. Accordingly, the two assignments of error are overruled.

### III. Conclusion

{¶ 18} The judgment of the Xenia Municipal Court is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.